IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEHINDE F., | |
| Plaintiff, | Case No. 22-cv-1161 |
| v. | |
| KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, | Judge John Robert Blakey |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

In this social security appeal Plaintiff Kehinde F. asks the Court to reverse the Commissioner's decision denying his claim for Disability Insurance Benefits (DIB), *see* [10]. In response, the Commissioner asks the Court to affirm her decision. *See* [12], [13]. For the reasons explained below, the Court grants the Commissioner's motion [12] and denies Plaintiff's request for reversal.

**I.   Factual Background and Procedural History**

Plaintiff applied for Title II and Title XVI disability on June 13, 2018, alleging that he had become disabled on August 3, 2017. [7-1] at 18. The SSA denied Plaintiff's claim initially on August 31, 2018, and on reconsideration on December 27, 2018. He requested a hearing, and, post-hearing, Administrative Law Judge ("ALJ") Margaret A. Carey denied his claim on July 29, 2021. *Id.* at 18–22. The Appeals Counsel denied Plaintiff's request for review on January 3, 2022, making the ALJ's decision the final of the Commissioner. *Id.* at 6–8.

Plaintiff suffers from several eye conditions, including blurry vision in his right eye, monocular double vision in his left eye, impaired visual acuity, and cataracts. *Id*. at 24. He also suffers from hypertension, diabetes mellitus, back pain, depression, obesity, chest pain, and nocturia. *Id*. at 21–24. Plaintiff has previously worked as a taxi driver, taxi driver coordinator, and kitchen helper. *Id*. at 25. He is considered to be of advanced age. *Id*. at 26; 20 C.F.R. §404.1563.

With regard to his eye problems, Plaintiff underwent cataract surgery on his left eye in July 2018, including implantation of a posterior chamber intraocular lens. *Id*. at 435. Following the surgery, Plaintiff's visual acuity post-surgery varied over time, ranging from right eye of 20/80 and left eye of 20/30 in January 2019, *id*. at 394, to 20/50 in May 2021, *id*. at 698, to 20/200 in his right eye and pinhole of 20/150, and 20/150 in his left eye, with pinhole of 20/80, *id* at 489. Other medical records dating from mid-January 2019 showed his visual acuity as 20/100 right, and 20/150 left. *Id*. at 484. Two days later, his visual acuity was 20/200 in his right eye and pinhole of 20/150, and 20/150 in his left eye, with pinhole of 20/80. *Id*. at 489.

Five months post-surgery, Plaintiff still reported blurred vision and monocular vertical diplopia in his left eye. *Id*. at 486. In January 2020, his Snellen examination yielded abnormal results, and his visual fields were decreased by 70% in both eyes. *Id*. at 496. At that time, his corrected vision in each eye was 20/200 and pinhole correction 20/200. *Id*. at 509. His treater, Dr. Hillman, confirmed these findings at the end of January 2020, finding right eye vision of 20/200 with correction and light perception with correction in his left eye. *Id*. at 512. Plaintiff exhibited very slow

responses throughout the refraction process. *Id.* The Humphrey visual field program showed severe, generalized constriction with an inferonasal island of vision remaining in the right eye, and the left eye could not be plotted due to poor vision. *Id.* The right eye showed two anterior cortical cataracts, 2+ nuclear sclerosis, and 2+ PSC cataracts (posterior subcapsular cataracts). *Id.* Visual field testing could not be performed with the left eye, because Plaintiff could not see the fixation point. *Id.* at 517. A year later, Plaintiff continued to have blurred and double vision. *Id.* at 544. In May 2021, his monocular diplopia was so severe that he was unable to fuse images despite using prisms. [7-2] at 1.

After that surgery, Plaintiff continued to experience significant issues with his left eye, which include headaches and constant pain, which interfered with his ability to sleep. [7-1] at 349. Because his left eye surgery caused him such pain, Plaintiff elected not to undergo the same surgery to his right eye. *Id.* at 23.

Plaintiff also has diabetic retinopathy in both eyes, *id.* at 490, as well as suspected glaucoma, *id.* at 491. Plaintiff uses eye medications daily, which he concedes help with his symptoms. *Id.* at 343.

In addition to his eye problems, Plaintiff also complained of ongoing hypertension, increasing chest pain, and heart disease. *Id.* at 23. In July 2018, Plaintiff was diagnosed with borderline hypertension. *Id.* at 439. Dr. Hillman confirmed hypertension in January 2020, with a blood pressure of 200/80, *id.* at 512, and Plaintiff was also treated for hypertension at Stroger Hospital in 2021, *id.* at 526. By February 2021, Plaintiff's hypertension had worsened to the point where, even

with medication (10 mg of enalapril, four times a day), his blood pressure readings were 171/94 and 171/91, *id*. at 571, 574. By April 2021, he complained of experiencing chest pain twice a week, with difficulty breathing when waking up. *Id*. at 647. For his heart conditions, Plaintiff took atorvastatin, enalapril, metformin, and nitroglycerin; he also took gabapentin for pain. *Id*. at 610. When he went to the ER for chest pain in May 2021, an abnormal EKG showed left ventricular hypertrophy and ST-T wave changes. *Id*. at 639. A stress test confirmed hypertrophy. *Id*. at 650. His May 2021 EKG showed an anterior myocardial infarction, *id*. at 639, and a chest x-ray taken at the same time showed low lung volumes, *id*. at 640.

Plaintiff also suffers from diabetes mellitus, with uncontrolled blood glucose levels, *Id*. at 462, and diabetic retinopathy, which worsened over time. *Id*. at 343, 394, 462, 512. In October 2018, Plaintiff started taking metformin, *id*. at 462, and by May of 2021, his retinopathy was characterized as severe. [7-2] at 1–2. He also experienced neuropathy, for which he was prescribed gabapentin. [7-1] at 565.

Plaintiff also experienced back pain, headaches, and left foot pain. *Id*. at 326. He reported headaches in October 2018, *id*. at 462, and indicated that he had suffered from them for years, *id*. at 483. He reported that headaches often accompanied his chest pain. *Id*. at 619. He began experiencing left foot pain in 2020, with sharp pain and numbness, worse with activity; doctors attributed the pain to his diabetes. *Id*. at 553. Plaintiff claimed that all of these conditions caused fatigue, which, in turn, caused increased blurry and double vision. *Id*. at 462, 533.

Plaintiff also battles depression, anxiety, and major depressive disorder, for which doctors prescribed sertraline. *Id*. at 23, 461. As a result, he has trouble concentrating and getting along with others. *Id*. at 341. The depression also affects his sleep: at times he cannot sleep at all, *id*. at 316, and other times he sleeps all day. *Id*. at 553.

ALJ Carey found that Plaintiff had the following severe impairments: blurry vision in the right eye, monocular double vision in the left eye, and hypertension. *Id*. at 21. She noted Plaintiff's alleged back pain and depression but opined that the evidence did not document corresponding medically determinable impairments. *Id*.

With regard to residual functional capacity ("RFC"), ALJ Carey found that Plaintiff could:

> perform medium work as defined in 20 CFR 404.1267(c) and 416.967(c), except the claimant can frequently climb ramps and stairs, occasionally climb ladders, ropes, and scaffolds, frequently balance and occasionally stoop and crouch. The claimant can do no commercial driving or work around hazards and unprotected heights. The claimant should perform work in front of him and not coming into his field of vision from the left. The claimant can frequently perform work activities involving near acuity, far acuity, color vision, and field of vision. The Claimant can avoid ordinary hazards. The claimant can only work with objects larger than the size of a quarter. The claimant can read ordinary textbook size print. The claimant cannot perform jobs that require excellent near acuity, like threading a needle.

*Id*.

Further, the ALJ found that the claimant's medically determinable impairments "could not reasonably cause all of the symptoms that the claimant alleged," and that the statements concerning intensity, persistence and limiting effects of symptom were not entirely consistent with the evidence. *Id*. at 22. She

5

ultimately found that Plaintiff could not perform his past work but could perform a significant number of other jobs existing in significant numbers in the national economy. *Id.* at 25–27. As a result, she determined that Plaintiff was not disabled. *Id.* at 27.

Plaintiff requested review, and the Appeals Council denied his request on January 3, 2022, making the ALJ's decision the final decision of the Commissioner. *Id.* at 18. Plaintiff filed suit in this Court on August 26, 2020, seeking review of the ALJ's (and the Commissioner's) decision. The parties then cross moved for summary judgment, *see* [10], [12].

## II. Legal Standard

An ALJ's findings of fact are "conclusive" as long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). The "threshold for such evidentiary sufficiency is not high"; it "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Thus, after a "critical review of the evidence," *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993), the Court affirms any adequately supported denial, even if reasonable minds could disagree about disability status, *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008), remanding only if the decision lacks evidentiary support or adequate discussion of the issues, *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

The SSA defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The SSA's regulations prescribe a five-part sequential test for determining disability, *see* 20 C.F.R. §§ 404.1520(a), 416.920, requiring the Commissioner to consider whether: (1) the claimant has performed any substantial gainful activity during the period for which claimant asserts disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity to perform ("RFC") claimant's past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see also Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

### III. **Discussion and Analysis**

Plaintiff argues that the ALJ's decision must be reversed because she improperly assessed the opinion evidence in the record. In particular, he argues that the ALJ improperly ignored portions of the Agency expert's opinion. [10] at 7. He also argues that the ALJ failed to evaluate his fatigue and improperly relied upon opinion evidence without assessing it as mandated by regulations. *Id.* at 9–10. Finally, he argues that the ALJ failed to set forth a legally sufficient symptom evaluation. *Id.* at 13. The Court considers Plaintiff's arguments below.

A.   **The ALJ's Assessment of the Agency's Expert's Opinion**

Plaintiff first argues that the ALJ improperly discounted the opinion evidence of Dr. Youkhana. [10] at 7. In support, Plaintiff complains that the ALJ's finding that Plaintiff could read ordinary textbook sized print directly contradicts Dr. Youkhana, who opined that Plaintiff: could not avoid ordinary hazards in the workplace, such as boxes on the floor, open doors, or approaching people or vehicles; was unable to read small print as well as ordinary newspaper or book print; could not view a computer screen; and could not determine differences in sizes and shapes of small objects such as screws, nuts, and bolts. [7-1] at 503. Plaintiff argues that the ALJ improperly ignored the evidence that limitations on Plaintiff's ability to see were due to his decreased visual acuity and his severe vision impairments. [10] at 7.

In emphasizing Dr. Youkhana's opinions, Plaintiff ignores the evaluations and opinions of multiple other medical professionals that the ALJ plainly considered. Dr. Hillman treated Plaintiff's vision issues with medication, which provided relief; Plaintiff reported improvement with double vision and reported that his fatigue and headaches also generally improved. [7-1] at 574. In August of 2018, Dr. Albright evaluated Plaintiff, noting that he had no severe physical impairments. *Id.* at 79–80. In December of 2018, Dr. Gotanco also treated Plaintiff and agreed with Dr. Albright's prognosis. *Id.* at 99–100. Indeed, even Dr. Youkhana's examination was largely normal, aside from decreased vision of 70 percent in both eyes. *Id.* at 496. Dr. Youkhana also filled out a questionnaire indicating that, in the workplace, the plaintiff could lift up to 100 pounds occasionally, up to 50 pounds frequently, and up

to 10 pounds continuously; sit, stand and walk for at least six hours in an 8-hour workday, without interruption; reach and push/pull continuously with both hands and operate foot controls continuously with both feet; frequently climb stairs, ramps, ladders, and scaffolds; and continuously stoop, kneel, crouch, and crawl. *Id.* at 499–502. The questionnaire also indicated, however, that Plaintiff's vision issues preclude him from operating a motor vehicle in the workplace, and Dr. Youkhana checked boxes indicating that Plaintiff could not read very small print, avoid workplace hazards, read ordinary newspaper print, view a computer screen, or determine differences in small objects such as nuts and bolts. *Id.* at 499–504. Finally, the ALJ considered the opinion of a doctor whose signature was not legible. *See* [7-1] at 477. The record suggests that the signature belonged to Dr. Nichols, [13] at 4, who opined that plaintiff had virtually no limitations: he could frequently perform all visual activities, could avoid workplace hazards; could lift 50 pounds occasionally, required no unscheduled breaks, and had symptoms that would rarely interfere with attention and concentration. [7-1] at 476–477.

Plaintiff challenges the ALJ's finding that Plaintiff could read ordinary textbook print, arguing that it remains inconsistent with Dr. Youkhana's findings. [10] at 7. But, as discussed above, the other doctors involved all found Plaintiff to be visually capable, and the ALJ's finding thus remains supported by substantial evidence. Plaintiff also argues that the ALJ was obliged to consider whether Plaintiff's visual limitations precluded him from performing the jobs identified. But,

9

as the Commissioner correctly notes, two of the three identified jobs involved no reading at all.

Plaintiff next argues that the ALJ failed to assess and provide fatigue-related limitations to address Plaintiff's claimed fatigue symptoms. [10] at 9. Again, Plaintiff emphasizes one piece of evidence (his own complaints), while ignoring the findings of the doctors who evaluated him. To be sure, Plaintiff mentioned on multiple occasions that he felt fatigued, but no doctor called for fatigue-related limitations in their reports. [7-1] at 73–74, 91–92, 476–477, 499–502. And "an ALJ need not uncritically accept the assertions of a Social Security applicant." *Brenda L. v. Saul*, No. 18 C 1551, 392 F.Supp.3d 858, 870 (N.D. Ill. 2019). And if no doctor has indicated that Plaintiff' fatigue constitutes a limitation, the ALJ may properly discount Plaintiff's reports of fatigue. *See Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (holding that, when conducting the RFC analysis, "an ALJ need only include limitations that are supported by the medical record"); *Deborah M., v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021) (affirming the ALJ's decision to omit manipulative limitations in her RFC and VE hypothetical because no treating or examining physician deemed claimant to be limited in this regard); *Conor B. v. Kijakazi*, No. 20 CV 3342, 2022 WL 4079461, at *4 (N.D. Ill. Sept. 6, 2022) (finding that the ALJ "did not err in her reasoned decision not to address or incorporate Claimant's subjective report that he needed to lie down for two hours every day" because the medical evidence did not corroborate this limitation and no doctor opined that "a limitation in this area was warranted"). *See also Stolte v. Astrue*, No. 1:10-CV-00087, 2010 WL 4852455, at *9 (N.D. Ind. Nov.

10

19, 2010) (noting that the social security regulations instruct ALJs to evaluate a claimant's statements "in relation to the objective medication evidence and other evidence ....")(citing 20 C.F.R. §§ 404.1529, 416.929; SSR 96–7p).

Taking the opinions of all doctors who evaluated Plaintiff into account, the ALJ properly weighed the evidence on both visual limitations and Plaintiff's fatigue to arrive at the conclusion that she did; she did not ignore any evidence that could support a different opinion. The Court finds nothing improper in the ALJ's assessment of the examiners' opinions.

### B        The ALJ's Reliance upon Opinion Evidence

Plaintiff next argues that the ALJ did not sufficiently articulate her reasons for favoring the opinion of Dr. Nichols based upon the requirements outlined in 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Plaintiff argues that, because the ALJ could not be certain that the opinion actually came from Dr. Nichols (the signature remained illegible), the ALJ failed to evaluate the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, the examining relationship or specialization. [10] at 11. But Plaintiff bears the burden of providing evidence to show that he qualifies for benefits. 42 U.S.C. § 423(d)(5)(A). And, as the ALJ explained, regardless of the doctor's identity, the opinion remained reasonably consistent with the evidence. [7-1] at 24–25. The ALJ explained that she relied upon the opinion because it was consistent with the evidence as a whole, specifically, Plaintiff's improved vision from 20/200 to 20/40 (left) and 20/100 (right), and the

11

opinion of Dr. Hillman that such scores better reflected plaintiff's actual abilities. *Id.* at 23–24.

Plaintiff suggests that remand is required because the ALJ did not rely upon Dr. Youkhana's opinion. [10] at 13. But Plaintiff does not get to pick and choose which evidence the ALJ can rely upon; nor can he prevail by emphasizing the evidence with which he agrees and ignoring the evidence that cuts against him. *Melissa G. v. Saul*, No. 18 C 50218, 2019 WL 4392995, at *10 (N.D. Ill. Sept. 13, 2019). The ALJ remained bound to consider the evidence; she was not obliged to rely upon Dr. Youkhana's opinion to the exclusion of the multiple other medical professionals who offered treatment evaluations and opinions. Neither Dr. Youkhana's opinion, nor Plaintiff's uncorroborated complaints are entitled to any special weight. Because the ALJ gave valid reasons for weighing the evidence as she did, this Court will not second guess those reasons and declines Plaintiff's invitation to reweigh the evidence. *See Beardsley v. Colvin*, 758 F.3d 834, 836–37 (7th Cir. 2014) (on review, the court "reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses.").

### C. The ALJ's Legally Sufficient Symptom Evaluation

Finally, Plaintiff argues that the ALJ reversibly erred in assessing his symptoms. Not so. The ALJ acknowledged Plaintiff's claim that his double vision, dizziness, and fatigue left him unable to work, but she determined that his statements were not consistent with the "medical evidence and other evidence in the

12

record." [7-1] at 22. Indeed, the ALJ noted that Plaintiff reported in March of 2021 that his symptoms, including his fatigue, were improving. *Id.* at 24. He denied fatigue in May of 2021. *Id.* at 647. Additionally, with Dr. Youkhana, Plaintiff demonstrated full and painless range of motion throughout; his gait and ability to bear weight were normal without the need for any assistive device; he had normal grip strength bilaterally and his ability to grasp, finger, and manipulate with each hand was normal; the ALJ determined that Dr. Youkhana's report undermined Plaintiff's testimony concerning his limitations. *Id.* at 23.

This Court gives special deference to an ALJ's credibility findings, overturning them only if "patently wrong." *Summers v. Berryhill,* 864 F.3d 523, 528 (7th Cir. 2017) (quoting *Eichstadt v. Astrue,* 534 F.3d 663, 667–68 (7th Cir. 2008)); *see also Matthews v. Saul,* 833 F. App'x 432, 437 (7th Cir. 2020) (finding even where the Commissioner conceded the record could be read differently, the ALJ's partially adverse credibility finding was not "patently wrong" and "substantial evidence" supported his conclusion that the plaintiff's complaints "were not entirely consistent with the record."). A decision is "patently wrong" when it lacks any explanation or support. *Elder*, 529 F.3d at 413–14. The Court cannot say that the ALJ's credibility findings were patently wrong here.

Plaintiff suggests that the ALJ relied upon unfavorable evidence and ignored favorable evidence. But she did not ignore the evidence he wants to emphasize; she considered and rejected it, explaining her reasons for doing so. The ALJ explained that she discounted Plaintiff's complaints about his symptoms based upon his

13

documented consistent improvement throughout the relevant period, including the reports showing that medication resolved or largely resolved his double vision and fatigue, and reports showing that he could treat his diabetes with herbal medication. [7-1] at 23–24. The ALJ also noted that Plaintiff has "very good exercise tolerance" and could jog for thirty to forty-five minutes, which undermined his claimed limitations. *Id.* at 23. Finally, the ALJ noted that Plaintiff's claimed limitations found no support in any medical opinion concerning limitations. *Id.* at 24–25.

Plaintiff suggests that the ALJ should have spent more time discussing his claims of eye pain, chest pain, and sleep issues. [10] at 14. But the ALJ considered these points among numerous others in making her decision, based upon the entire record. Additionally, the ALJ noted that many of the conditions Plaintiff complained of were resolved, and none of them were reasons for which Plaintiff applied for disability in the first place, as the application noted that cataracts and diabetes were the causes of the disability. [7-1] at 23. Giving the ALJ's decision "a commonsensical reading rather than nitpicking at it," this Court finds that the ALJ properly supported her assessment of Plaintiff's symptoms. *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) (citing *Johnson v. Apfel,* 189 F.3d 561, 564 (7th Cir. 1999)).

## IV.     Conclusion

For the reasons explained above, this Court finds that the ALJ's decision rests upon substantial evidence in the record. Accordingly, the Court grants the Commissioner's motion for summary judgment [12] and affirms the Commissioner's decision to deny benefits.

Dated:  September 29, 2023                              Entered:

                                                        _____
                                                        John Robert Blakey
                                                        United States District Judge